186 P.3d 696

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Michael S. BALLOU, Defendant–Appellant.**

Nos. 33247, 33248.

Court of Appeals of Idaho.

June 11, 2008.

---

842

Molly J. Huskey, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Daniel W. Bower, Deputy Attorney General, Boise, for respondent.

PERRY, Judge.

In these consolidated cases, Michael S. Ballou appeals from his judgment of conviction and sentences for thirteen counts of grand theft, fourteen counts of burglary, and one count of felony eluding a peace officer. For the reasons set forth below, we affirm.

## I.

### FACTS AND PROCEDURE

In the early morning hours of November 26, 2004, a police officer observed an individual driving a vehicle that did not have any license plates on it. The officer initiated the patrol car's overhead lights in an attempt to stop the vehicle, but the driver led the officer on a high-speed chase through town, running several stop signs and stop lights. More officers joined the pursuit, and the car stopped at an apartment complex. The driver, who was later determined to be Ballou, fled on foot. Officers chased Ballou around the apartment complex, but eventually lost sight of him. The officers did not know the suspect they were pursuing was Ballou, nor did they know which apartment he entered, so they began to knock on doors of the apartment complex in search of the suspect.

A little before four in the morning, and approximately forty minutes after losing sight of Ballou, officers knocked on Ballou's apartment door. Ballou's wife answered the door wearing only a blanket. Initially, Ballou's wife told officers that she was home alone, but later disclosed her husband's name and indicated that he was home. One of the officers recognized Ballou's name from a previous encounter and concluded that it was Ballou they had been pursuing that morning. An officer then told Ballou's wife that Ballou was wanted for questioning regarding a possible felony eluding charge. That officer also told Ballou's wife that, if she refused consent to enter the apartment and search for Ballou, the officers could detain her in handcuffs, put her in a patrol car, and watch the house until they got a warrant. Ballou's wife retreated down the steps in front of the apartment and allowed the initial officer and another officer to enter the apartment just as Ballou was jumping out of a back window. The officers immediately ran out of the apartment and Ballou, who was wearing different clothes than when he entered the apartment, was apprehended by a canine unit and placed under arrest for felony eluding a peace officer.

Ballou's wife said she was cold and reentered the apartment, and two of the officers entered with her. The officers waited in the front room of the apartment for approximately five minutes while Ballou's wife put some clothes on. When Ballou's wife emerged, one of the officers asked for permission to search the back room where Ballou had jumped out of the window. Ballou's wife consented to the officer's request. The officers briefly entered the back room but then left to process the car that Ballou had been driving, which was determined to have been stolen.

Several hours later after processing the car, the officer who asked for permission to search the back room returned to the apartment and asked Ballou's wife for permission to search for the clothes Ballou had been wearing when the chase began. Ballou's wife asked about her rights, and the officer responded that she could either consent to the search or the officer could take her to another location while a warrant was obtained. Ballou's wife consented to the search. Eventually, another officer arrived to present Ballou's wife with a written consent form to search the apartment. When the officer arrived with the written consent form, there were already three officers in the apartment. The written consent form contained language indicating that Ballou's wife had "been informed of [her] constitutional right not to have a search made of the premises." Ballou's wife signed the consent form. A search of the apartment yielded burglary tools and a substantial amount of stolen goods including video and sound equipment and computers.

Initially, Ballou was charged with grand theft, felony eluding a peace officer, and a persistent violator sentence enhancement. Ballou filed a motion to suppress the evidence obtained from his apartment arguing that his wife's consent was not freely and voluntarily given. The district court held a hearing at which three officers testified-the officer who initiated the chase, the officer who followed Ballou's wife back into the apartment and asked for permission to search the back room and returned later to look for Ballou's clothes, and the officer who obtained Ballou's wife's signature on the written consent form. The district court also reviewed an audio tape of the initial encounter between Ballou's wife and the officers when they first knocked on her apartment door.

After the hearing, the district court concluded that the doctrine of hot pursuit did not justify the initial entry into the apartment. The district court also concluded that Ballou's wife's consent for the initial entry, if given, was not voluntary. However, the district court determined that the initial entry did not result in a search because Ballou jumped out the window as the officers entered and the officers immediately left the apartment. The district court concluded that all of the subsequent entries were made with the voluntary consent of Ballou's wife.

Ballou filed a motion for reconsideration. At the hearing on this motion, his wife testified that, although the officers did not threaten her, she felt threatened by their presence and the events that had taken place that

morning. Additionally, she testified that the oral consent she granted the officer was only consent to search for Ballou's clothing. Both parties submitted briefing on the motion for reconsideration, which the district court denied.

Ballou pled guilty to thirteen counts of grand theft, I.C. §§ 18–2403, 18–2407; fourteen counts of burglary, I.C. § 18–1401; one count of felony eluding a peace officer, I.C. § 49–1404(1)(2); and admitted to a persistent violator enhancement, I.C. § 19–2514. The district court sentenced Ballou to concurrent unified sentences of thirty-five years, with minimum periods of confinement of fifteen years. Ballou appeals, challenging the denial of his motion to suppress and the excessiveness of his sentences.

## II.

## ANALYSIS

### A. Motion to Suppress

■ The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson,* 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina,* 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers,* 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

■ The Fourth Amendment to the United States Constitution and Article I, Section 17 of the Idaho Constitution protect people against unreasonable searches and seizures. The guarantees under the United States Constitution and the Idaho Constitution are substantially the same. *State v. Fees,* 140 Idaho 81, 88, 90 P.3d 306, 313 (2004). Warrantless searches are presumptively unreasonable. *State v. Anderson,* 140 Idaho 484, 486, 95 P.3d 635, 637 (2004). The burden of proof rests with the state to dem-

onstrate that the search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *Id.* Evidence obtained in violation of these constitutional protections must be suppressed in a criminal prosecution of the person whose rights were violated. *State v. Curl,* 125 Idaho 224, 227, 869 P.2d 224, 227 (1993).

### 1. Hot pursuit

■ The district court concluded that the initial entry into Ballou's apartment was illegal and that the doctrine of hot pursuit did not apply. On appeal, the state argues that the initial entry was justified by hot pursuit.

■ A warrantless entry into a suspect's home may be justified by the doctrine of hot pursuit. *United States v. Santana,* 427 U.S. 38, 42–43, 96 S.Ct. 2406, 2409–10, 49 L.Ed.2d 300, 305 (1976). The doctrine of hot pursuit prevents a suspect from escaping into a private residence after an arrest has been initiated in a public place. *Id.* at 43, 96 S.Ct. at 2410, 49 L.Ed.2d at 305. In order for the doctrine of hot pursuit to apply, the pursuit of the suspect must be immediate and continuous. *Welsh v. Wisconsin,* 466 U.S. 740, 753, 104 S.Ct. 2091, 2099, 80 L.Ed.2d 732, 745 (1984). *See also United States v. Lindsay,* 506 F.2d 166, 173 (D.C.Cir.1974) (noting that "speed and a continuous knowledge of the alleged perpetrator's whereabouts are the elements which underpin [the hot pursuit] exception to the warrant requirement").

Pursuit of a suspect was not considered continuous when the pursuing officer had not seen the suspect for thirty minutes. *United States v. Johnson,* 256 F.3d 895, 908 (9th Cir.2001). In *Johnson,* an officer pursuing a suspect stopped when the suspect entered a wooded area. The Ninth Circuit determined that the continuity of the pursuit was broken because the officer had not seen the suspect for thirty minutes and because the officer had no idea exactly where in the woods the suspect was hiding. *Id.* at 907–08. Although the court recognized that the continuity of a pursuit can sometimes be delayed and not broken, such as when officers wait for reinforcements, it determined that was not the

case in *Johnson* because the officer did not know where the suspect was. *Id.* at 908.

In this case, the state acknowledges that it was forty minutes between the time the officers lost sight of Ballou and the time they knocked on his apartment door. Additionally, like the facts of *Johnson*, these forty minutes were not spent waiting for reinforcements. Rather, the officers spent this time knocking on the doors of other apartments in the search for Ballou. The officers had no idea which apartment Ballou had retreated into and there was no continuous knowledge of Ballou's whereabouts. Therefore, based on the time lapse of forty minutes and the fact that the officers did not know which apartment Ballou had entered, we conclude that the initial entry into Ballou's apartment was not justified by the hot pursuit exception to the warrant requirement.[1]

## 2. Voluntary consent

■ Ballou argues that the threat an officer first issued to his wife upon arrival at the apartment, along with the circumstances surrounding the entire encounter, rendered involuntary any subsequent consents his wife provided. When the officers first arrived at Ballou's apartment, an officer told his wife that, if she did not give them permission to enter the apartment to look for Ballou regarding the felony eluding, they would handcuff her and keep her in a patrol vehicle until a search warrant was obtained.

■ Although a warrantless entry or search of a residence is generally illegal and violative of the Fourth Amendment, such an entry or search may be rendered reasonable by an individual's consent. *State v. Johnson,* 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta,* 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct.App.1998). In such instances, the state has the burden of demonstrating consent by a preponderance of the evidence. *State v. Kilby,* 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct.App.1997). The state must show that consent was not the result of duress or coercion, either direct or implied. *Schneckloth v. Bustamonte,* 412 U.S. 218, 248, 93 S.Ct. 2041, 2058, 36 L.Ed.2d 854, 875 (1973); *State v. Whiteley,* 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App.1993). The voluntariness of an individual's consent is evaluated in light of all the circumstances. *Whiteley,* 124 Idaho at 264, 858 P.2d at 803. Consent to search may be in the form of words, gestures, or conduct. *State v. Knapp,* 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct.App.1991). Whether consent was granted voluntarily, or was a product of coercion, is a question of fact to be determined by all the surrounding circumstances. *State v. Hansen,* 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003). In a suppression hearing where voluntariness is an issue, the power to assess the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence, and draw factual inferences is vested in the trial court. *Abeyta,* 131 Idaho at 708, 963 P.2d at 391.

■ The district court here found that the consent by Ballou's wife before the initial entry into the apartment was not voluntary, if consent was given at all.[2] The district court found the initial consent to enter the apartment and search for Ballou was not voluntarily given by Ballou's wife because the officer told her "words to the effect that, if she refused to give permission, then the police would handcuff her and keep her in a patrol car until a search warrant was obtained." However, the district court determined this initial entry did not result in a search because, shortly after the officers entered the apartment, Ballou jumped out the window and the officers left immediately

---

1. Based on our decision that hot pursuit does not apply in this case, we need not address the state's argument that the district court erred in requiring proof of an exigent circumstance in addition to hot pursuit to justify a warrantless entry into Ballou's apartment.

2. Although the district court never made any clear finding that Ballou's wife consented to the initial entry and the evidence is equivocal in that regard, Ballou does not argue that no consent was given before the initial entry; he argues only that the consent was coerced. Therefore, we will begin with the proposition that there was an initial consent and proceed to evaluate whether it was shown to be voluntary.

thereafter.[3] Regarding the second entry, the district court determined the officer "did enter the apartment with [Ballou's wife's] consent when he followed her into the apartment to allow her to change clothes." Additionally, after the second entry and when Ballou's wife returned from changing clothes, the district court found the officer obtained voluntary consent to search the back room. The district court also determined that the officer obtained voluntary consent to search for Ballou's clothes after he returned from processing the stolen car. In analyzing the voluntariness of the consent given to search the back room after Ballou's wife changed clothes and the later consent to search for Ballou's clothes, the district court found that there was a sufficient lapse of time between the initial illegal entry and these consents and that the nature of the conversation and atmosphere had changed. The officer testified that the conversation surrounding these two consents was cordial and friendly, and the district court noted that no evidence to the contrary was produced. Therefore, the district court concluded that the second and third consents were voluntarily given. Finally, the district court found that, when Ballou's wife was presented with the consent form and clearly explained her rights and signed the form, the final act of signing the consent form "unequivocally again shows that the earlier consent was voluntary."

After the first suppression hearing, Ballou filed a motion for reconsideration and a second hearing was held to take testimony from his wife. Ballou's wife testified that she was not threatened by the officers, but that she felt threatened by their presence. Ballou's wife testified that an hour or two passed between the initial entry and the consent she granted for the officer to search for Ballou's clothing after the officer returned from processing the stolen vehicle. After taking this additional testimony from Ballou's wife, the district court confirmed its findings that Ballou's wife's consent to search the back room, consent to search for Ballou's clothes, and act of signing the consent form were voluntary and denied Ballou's motion for reconsideration.

In denying Ballou's motion for reconsideration, the district court relied on Ballou's wife's testimony that none of the officers threatened her. The district court concluded that Ballou's wife's "testimony makes it clear, however, that [the initial police statement that officers would put her in a patrol car until a warrant was obtained] had no impact on her consent to the search of her apartment." Additionally, with regard to the second entry when Ballou's wife returned to the apartment to put clothes on and two officers entered with her, the district court incorrectly determined that Ballou's wife consented to this entry. There is no evidence in the record that the officers asked for or obtained Ballou's wife's permission to enter the apartment with her so she could put clothes on. However, the second entry into the apartment was in close temporal proximity to the initial entry and there is nothing in the record suggesting that Ballou's wife objected to the officers' second entry. Therefore, because we ultimately conclude that the initial entry into the apartment was consensual, we also conclude that the second entry was consensual because the second entry was in close temporal proximity to the initial consensual entry and Ballou's wife's initial consent to enter the apartment was not revoked. In addition, the district court found that no evidence was obtained from the second entry until after Ballou's wife returned from changing her clothes and granted the officer's request for consent to search. Ballou does not challenge this finding.[4]

3. The district court was incorrect in this regard. Any entry of a home is a "search" for Fourth Amendment purposes. See, e.g., Payton v. New York, 445 U.S. 573, 589–90, 100 S.Ct. 1371, 1381–82, 63 L.Ed.2d 639, 652–53 (1980). However, because there was no evidence seen in that initial entry, no suppression is required unless the initial entry tainted Ballou's wife's subsequent consents.

4. The record does not appear to support the district court's conclusion that the officer did not observe any stolen property until after Ballou's wife returned from putting clothes on and granted consent. However, because we conclude that the initial consent was not rendered involuntary by the officer's statement regarding a warrant and because there is no indication in the record that Ballou's wife revoked that initial consent, we conclude that the second entry into the apart-

■ A defendant's consent is more likely to be found involuntary if contaminated by officers' false or erroneous statements regarding a warrant or the ability to obtain one. *See Abeyta*, 131 Idaho at 708–09, 963 P.2d at 391–92; *State v. Fee*, 135 Idaho 857, 863, 26 P.3d 40, 46 (Ct.App.2001). In *Abeyta*, officers initially entered the defendant's residence illegally. Later, the defendant was asked to consent to a search of his residence and initially refused. An officer then told Abeyta that if he did not consent the officer would obtain a warrant. On appeal, Abeyta argued that this statement by the officer rendered his consent involuntary. This Court noted that the officers had sufficient probable cause to obtain a warrant, and therefore the officer had not made a false or erroneous statement regarding a warrant. Consequently, we held that Abeyta's consent was not rendered involuntary by the officer's truthful explanation that he could obtain a warrant. *Id.* at 709, 963 P.2d at 392.

Many jurisdictions have concluded that, if officers have probable cause to obtain a warrant, telling a suspect that they will obtain a warrant if consent is refused does not vitiate the suspect's consent to search. *See, e.g., United States v. Marshall*, 348 F.3d 281, 286 (1st Cir.2003) (concluding that, when officers have probable cause to obtain a warrant, telling a suspect her apartment will be searched whether or not she consents because the officers will obtain a warrant is not inherently coercive); *United States v. Meza–Corrales*, 183 F.3d 1116, 1125 (9th Cir.1999) (noting that "the existence of probable cause ... lessens any need for [the court] to deem that a consent was invalid on the basis of a police officer's statements regarding the obtaining of a search warrant"); *United States v. Salvo*, 133 F.3d 943, 954 (6th Cir.1998) (holding that it is well settled that an agent's statement that he or she will obtain a warrant if a suspect does not consent to a search does not taint consent by the suspect); *United States v. Evans*, 27 F.3d 1219, 1231 (7th Cir.1994) (concluding that, when agents could have obtained a warrant, expressing their intent to do so does not vitiate an individual's consent to search); *United States v. Cal-*

*vente*, 722 F.2d 1019, 1023 (2d Cir.1983) (noting that "advising a person of the fact that a search warrant can be obtained does not constitute coercion"); *State v. Owens*, 418 N.W.2d 340, 344 (Iowa 1988) (holding that informing a suspect that officers will obtain a warrant when probable cause exists to do so does not vitiate consent); *State v. Brown*, 245 Kan. 604, 783 P.2d 1278, 1285 (1989) (noting that "generally, a threat to obtain rather than a threat to seek a search warrant will invalidate a subsequent consent if there were not then grounds upon which a warrant could issue"); *State v. Tucker*, 262 Neb. 940, 636 N.W.2d 853, 860 (2001) (concluding that "a statement of a law enforcement agent that, absent a consent to search, a warrant can be obtained does not constitute coercion").

■ In this case, Ballou led officers on a high-speed chase through town where he ran several stop signs and stop lights. During the initial conversation with Ballou's wife, one of the officers determined, based on a past experience with Ballou, that it was Ballou that had been eluding the officers earlier that morning. The officers also knew that this was Ballou's apartment. Therefore, the officers had probable cause to obtain a warrant to search the apartment for Ballou based on the offense of felony eluding. Thus, the officers were not responding falsely or erroneously regarding the ability to get a warrant when they first spoke to Ballou's wife. Because the officer honestly told Ballou's wife that a warrant could be obtained to search the apartment, we conclude that the district court incorrectly applied the law to the facts in determining that the officer's "threat" rendered the initial consent to enter the apartment and search for Ballou involuntary. Furthermore, we are not persuaded that the officer's statement to Ballou's wife that, if she refused consent to search, she would be handcuffed and detained rendered her consent involuntary. If Ballou's wife had denied the officer's initial request to enter the apartment and search for Ballou, then the officers would have been justified in precluding her from returning to the apartment

---

ment when the officers followed Ballou's wife in so she could put some clothes on was legal

regardless of when the stolen property was observed.

where she potentially would have been able to destroy evidence or pose a threat to officer safety as they searched the apartment. *See, e.g., United States v. Agosto,* 502 F.2d 612, 614 (9th Cir.1974) (noting that an officer's statement that the premises will be secured while a warrant is obtained does not render a subsequent consent per se involuntary); *Fee,* 135 Idaho at 862–63, 26 P.3d at 45–46 (consent to search still voluntary even though defendant was under arrest); *Whiteley,* 124 Idaho at 265, 858 P.2d at 804 (consent to search still voluntary even though defendant was in handcuffs). Accordingly, having determined that the initial consent was voluntary, we address whether the district court was correct in concluding that the subsequent consents were voluntarily given by Ballou's wife.

Although the testimony indicates that there were numerous officers involved in the initial entry, it also demonstrates that every other time consent was given Ballou's wife was speaking with only one officer. *State v. Garcia,* 143 Idaho 774, 778, 152 P.3d 645, 649 (Ct.App.2006) (concluding that the number of officers involved in the confrontation is a factor in determining whether consent was voluntary). The district court relied on the lapse of time between the initial entry to search for Ballou and Ballou's wife's subsequent grants of consent. The district court also placed weight on the testimony of the officer who stated that the conversation with Ballou's wife became much more cordial and friendly after the initial encounter. Ballou's wife signed a written voluntary consent form that contained language informing her of her constitutional right to refuse consent. Applying our standard of review and the deference granted to the trial court concerning credibility and weight to be attached to the evidence, we conclude that the district court correctly determined that Ballou's wife's subsequent consents were voluntarily given.

**3. Scope of the search**

Ballou asserts that, if his wife's consents are determined to have been voluntarily given, she only consented to a search for his clothing. Therefore, Ballou argues that

the officers' searches exceeded the scope of the consent.

When the basis for a search is consent, the state must conform its search to the limitations placed upon the right granted by the consent. *United States v. Ward,* 576 F.2d 243, 244 (9th Cir.1978); *Mason v. Pulliam,* 557 F.2d 426, 429 (5th Cir.1977); *State v. Thorpe,* 141 Idaho 151, 154, 106 P.3d 477, 480 (Ct.App.2004). The standard for measuring the scope of consent under the Fourth Amendment is that of objective reasonableness—what would "the typical reasonable person have understood by the exchange between the officer and the suspect." *Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297, 302 (1991). *See also Thorpe,* 141 Idaho at 154, 106 P.3d at 480.

The officer who entered the apartment with Ballou's wife so that she could put some clothes on testified that, after she had gotten dressed, Ballou's wife granted the officer consent to search the back room. Later, when that same officer returned to the apartment after processing the stolen vehicle, he asked Ballou's wife for, and received, consent to search for Ballou's clothes. A search for the clothing would encompass any part of the apartment where the clothing might be hidden.

After the officer had been granted consent to search for Ballou's clothes, another officer arrived at the scene with a written consent form. The consent form that Ballou's wife signed granted the officers permission to search the entire premises. The record is not clear as to whether the clothing was found before or after Ballou's wife signed the written consent allowing officers to search her residence. Ballou's wife had consented multiple times to various searches, including searches for Ballou, clothing, and of the back room. Therefore, it was reasonable for the officers to believe that they had consent to search the entire apartment. Furthermore, there is no testimony that Ballou's wife objected to the scope of the search at the time, and she eventually signed a form consenting to the search of the apartment. We conclude that the officers in this case did not exceed the scope of the consents provided by Ballou's wife.

## B. Sentence Review

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct.App.2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App.1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

Ballou was sentenced to concurrent unified terms of thirty-five years, with minimum periods of confinement of fifteen years, for his twenty-eight felonies and the persistent violator enhancement. On appeal, Ballou does not assert that his sentences are illegal,[5] but argues that the district court abused its discretion in imposing excessive sentences. To support this claim, Ballou cites a long history of abuse in his family, drug addiction, and the fact that he expressed regret and accepted responsibility for his crimes.

Ballou's presentence investigation report reveals that his juvenile record consists of five offenses, three of which are for taking a motor vehicle. Ballou's adult record contains nearly ten felonies. Ballou's crimes in this case targeted approximately fifteen area churches.

At sentencing, the district court noted that it was considering Ballou's mental health issues and childhood abuse. The district court then concluded:

> And certainly everyone who had a traumatic childhood did not turn out to be a criminal and certainly not a career criminal as you have apparently become, Mr. Ballou.
>
> The sentence, I think, needs to be one which does protect society, first and foremost, given the fact that you seem to have made a career of being a thief. I think that there is a serious risk to the community that you will reoffend, and that is the primary—or of primary importance to me in imposing a sentence.
>
> I don't think I've ever had a case with as many felonies in one case for which I'm sentencing here today.... And I don't think I've ever seen anyone with quite the record you've had for your past convictions, Mr. Ballou.

Upon review, we conclude that the district court did not abuse its discretion in sentencing Ballou to an aggregate unified term of thirty-five years, with minimum periods of confinement totaling fifteen years.

## IV.

## CONCLUSION

The district court correctly concluded that the hot pursuit doctrine did not justify the officers' initial entry into Ballou's apartment. However, the district court incorrectly determined that the officer's statement regarding obtaining a warrant to search for Ballou rendered the initial consent involuntary. The district court correctly determined that the officers received voluntary consents for their subsequent entries and searches of the apart-

---

5. Although Ballou's sentences do not exceed the statutory maximum, we note that the judgment of conviction as written does not specify terms per count. Therefore, an amended judgment of conviction specifying the terms for the counts should be entered.

ment. We further conclude that the officers did not exceed the scope of the consents provided by Ballou's wife in their search of the apartment. The district court did not abuse its discretion in sentencing Ballou to concurrent unified terms of thirty-five years, with minimum periods of confinement of fifteen years, for the twenty-eight felonies and the persistent violator enhancement. There-fore, Ballou's judgments of conviction and sentences are affirmed.

Chief Judge GUTIERREZ and Judge LANSING, concur.