**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 39014**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2012 Opinion No. 46** |
| Plaintiff-Appellant, | ) | |
| | ) | **Filed: August 30, 2012** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| BRENT JACOB TYLER, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. G. Richard Bevan, District Judge.

Order of the district court granting motion to suppress evidence, <u>affirmed</u>.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for appellant. Russell J. Spencer argued.

Sara B. Thomas, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for respondent. Brian R. Dickson argued.

_____

PERRY, Judge Pro Tem

Brent Jacob Tyler was charged with possession of a controlled substance. Prior to trial, the district court granted Tyler's motion to suppress evidence discovered in his pockets after an officer reached under his jackets during a pat-down frisk for weapons. The State appeals, and asserts that the district court applied an incorrect standard for pat-down frisks. We affirm.

**I.**

**BACKGROUND**

On November 11, 2010, officers from the narcotics unit of the Twin Falls Police Department asked another officer to conduct a traffic stop of a vehicle that was observed making an illegal U-turn. Upon making the stop, the officer recognized the driver, knew that he was on probation, and decided to search the driver and his vehicle in accordance with the terms of the driver's probation. Tyler was a passenger in the vehicle. The officer asked Tyler to exit the

vehicle and asked him if he had any weapons. Tyler reported that he had an X-acto brand knife and he moved one of his two jackets aside so the officer could see it protruding from the left breast pocket of his shirt.[1] Tyler then attempted to retrieve the knife for the officer, prompting the officer to repeatedly ask Tyler not to reach for it. At this point, the following exchange occurred:

> Officer: Besides that little X-acto knife, do you have any other weapons on you?
> Tyler: No, I don't.
> Officer: Okay, mind if I pat you down?
> Tyler: I don't mind if you pat me down.
> Officer: Okay, I'm going to take that knife out of your pocket--
> Tyler: All right.
> Office: --and then I'll pat you down for more weapons. Okay? Is that okay?
> Tyler: You can pat me down, doing a Terry search is fine, but I'm not going to give you permission to dig through my pockets.

The officer asked Tyler to turn around and to interlace his fingers behind his back so the officer could control his hands. Standing behind Tyler, the officer reached around him and removed the knife from the left breast pocket of his shirt. The officer then reached inside and underneath Tyler's two jackets to pat down the right breast pocket of Tyler's flannel shirt. The officer testified that he did not need to unzip, unbutton, or remove Tyler's jackets in order to access the pockets because the jackets were "open." While patting down the pocket, the officer felt an object that he recognized as a syringe that was "drawn up as if it was loaded with something." After the officer located and removed the syringe from Tyler's pocket, Tyler objected to the frisk as follows:

> Tyler: I would like it to be known that I did not give you permission to--
> Officer: You gave me permission to pat you down--
> Tyler: On the outside--
> Officer: I patted you down and felt the syringe in your pocket--
> Tyler: On the outside of my clothing for guns or knives, correct?
> Officer: I know what a pat down is.

The officer removed the syringe, determined that it appeared to contain methamphetamine, placed Tyler under arrest, and searched Tyler's other pockets yielding the discovery of several

---

[1]    Tyler testified that he was wearing multiple layers of clothing consisting of an undershirt, a "button-up flannel shirt" with breast pockets, a "zip-up hoodie jacket, and another jacket over that."

2

pills and a small plastic bag containing a white crystal substance. Tyler was charged with possession of a controlled substance.

Tyler filed a motion to suppress evidence including the syringe, its contents, and all evidence discovered subsequent to his arrest. Tyler asserted that the officer exceeded the scope of a pat-down by reaching inside his jackets. The State argued that the frisk was reasonable based on both Tyler's consent and the need for officer safety. The district court determined that the frisk was based only on Tyler's consent and that the officer exceeded the scope of that consent. In determining the scope of Tyler's consent to a pat-down, the district court concluded that under *Terry v. Ohio*, 392 U.S. 1 (1968), "a pat-down is reasonably understood to involve the passing of an officer's hands over the outside of a person's clothing only, commonly to determine whether the person is carrying a weapon," and that in this case, "the search is illegal as being beyond the scope of the pat-down, as that term was understood." Therefore, the court granted Tyler's suppression motion. The State appeals.

## II.

## ANALYSIS

A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct. App. 1999). In *Terry*, the United States Supreme Court articulated a stop-and-frisk exception to the Fourth Amendment warrant requirement. An officer may frisk an individual if the officer can point to specific and articulable facts that would lead a reasonably prudent person to believe that the individual with whom the officer is dealing may be armed and presently dangerous and nothing in the initial stages of the encounter serves to dispel this belief. *Id.* at 27; *State v. Babb*, 133 Idaho 890, 892, 994 P.2d 633, 635 (Ct. App. 2000); *State v. Fleenor*, 133 Idaho 552, 555, 989 P.2d 784, 787 (Ct. App. 1999). In our analysis of a frisk, we look to the facts known to the officer on the scene and the inferences of risk of danger reasonably drawn from the totality of those specific circumstances. *Babb*, 133 Idaho at 892, 994 P.2d at 635; *Fleenor*, 133 Idaho at 555, 989 P.2d at 787. *See also State v. Muir*, 116 Idaho 565, 567-68, 777 P.2d 1238, 1240-41 (Ct. App. 1989).

A warrantless search may also be permissible when conducted pursuant to an individual's consent. *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131

Idaho 704, 707, 963 P.2d 387, 390 (Ct. App. 1998). In such instances, the State has the burden of demonstrating consent by a preponderance of the evidence. *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997). Consent to search may be in the form of words, gestures, or conduct. *State v. Knapp*, 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct. App. 1991). It is well settled that when the basis for a search is consent, the State must conform its search to the limitations placed upon the right granted by the consent. *State v. Turek*, 150 Idaho 745, 749, 250 P.3d 796, 800 (Ct. App. 2011); *State v. Ballou*, 145 Idaho 840, 849, 186 P.3d 696, 705 (Ct. App. 2008); *State v. Thorpe*, 141 Idaho 151, 154, 106 P.3d 477, 480 (Ct. App. 2004). The standard for measuring the scope of consent under the Fourth Amendment is that of objective reasonableness, or in other words what a reasonable person would have understood by the exchange between the officer and the suspect. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991); *Ballou*, 145 Idaho at 849, 186 P.3d at 705.

The standard of review of a suppression motion based on a Fourth Amendment violation is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The district court's ruling that the search was illegal "as being beyond the scope of a pat-down, as that term was understood" could be interpreted to mean either that the officer exceeded the scope of Tyler's consent or the scope of a pat-down pursuant to *Terry*. In this case, where Tyler consented to "a Terry search," the State argues that the only issue on appeal is whether the search performed exceeded the scope of a permissible search under *Terry*. The State challenges both the district court's legal conclusion that a *Terry* frisk is limited to the outer layer of clothing, and the court's factual finding that Tyler's shirt pocket was covered by his jackets along with the implication that it was thus not an outer layer of clothing.

## A. Scope of a *Terry* Frisk

We first address the standards governing the scope of a pat-down frisk under *Terry*. The Supreme Court has defined a frisk as "a carefully limited search of the outer clothing." *Terry*,

4

392 U.S. at 30. *See also Arizona v. Johnson*, 555 U.S. 323, 330 (2009) (because "a limited search of outer clothing for weapons serves to protect both the officer and the public," a pat-down is constitutional); *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993) (holding the seizure of identifiable contraband felt during a pat-down of a "suspect's outer clothing" is justified). This Court has repeatedly reiterated that under *Terry*, a protective frisk is generally limited to a pat-down of the outer clothing. *State v. Crooks*, 150 Idaho 117, 119, 244 P.3d 261, 263 (Ct. App. 2010) ("Under *Terry*, an officer may conduct a limited pat-down search, or frisk, of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons."); *State v. Bishop*, 146 Idaho 804, 818, 203 P.3d 1203, 1217 (2009) (same); *State v. Faith*, 141 Idaho 728, 730, 117 P.3d 142, 144 (Ct. App. 2005) ("The stop and frisk procedure . . . is defined as 'a carefully limited search of the outer clothing'"); *State v. Greene*, 140 Idaho 605, 607, 97 P.3d 472, 474 (Ct. App. 2004) (holding a *Terry* frisk is initially limited to "a frisk of the outer clothing").

Nevertheless, "limited exceptions to this standard have been recognized." *Greene*, 140 Idaho at 607-08, 97 P.3d at 474-75. For example, a more intrusive search may be permissible when the suspect makes threatening movements, *id.* at 608, 97 P.3d at 475; *accord United States v. Thompson*, 597 F.2d 187, 191 (9th Cir. 1979), or when the officer sees a weapon-like bulge in the suspect's clothing, *see State v. Holler*, 136 Idaho 287, 292, 32 P.3d 679, 684 (Ct. App. 2001); *accord United States v. Baker*, 78 F.3d 135, 138 (4th Cir. 1996); *United States v. Hill*, 545 F.2d 1191, 1193 (9th Cir. 1976). Some jurisdictions have also recognized an exception when an effective pat-down is impossible due to the bulkiness of the suspect's clothing. *See Thompson*, 597 F.2d at 191; *State v. Triplett*, 707 N.W.2d 881, 884 (Wis. Ct. App. 2005). And of course, once "an officer conducts a frisk of the outer clothing of a defendant and locates an object which he determines might be a weapon . . . the officer [may] pursue a further more intrusive search to determine the nature of the unknown object in the interest of officer safety." *Greene*, 140 Idaho at 607, 97 P.3d at 474. However, "these exceptions do not 'expand the scope' of *Terry*" as the State appears to suggest. *Id.* at 607, 97 P.3d at 474. Additional intrusions are not allowed in every case, but are "strictly circumscribed by the exigencies which justify [their] initiation." *Terry*, 392 U.S. at 26. Thus, whether the officer pats down an individual's outer clothing or takes additional measures, "in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those

facts, reasonably warrant that intrusion." *Id.* at 21. In other words, while *Terry* may permit additional intrusion beyond a pat-down of an individual's outer clothing in some circumstances, the State bears the burden of demonstrating that the additional intrusion was warranted.[2]

The State suggests that the standard under *Terry* is merely whether the search was "confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." This language is taken directly from the *Terry* opinion. *See id.* at 29. However, standing alone it addresses only one element of "the balance between the particular interests involved here--the neutralization of danger to the policeman in the investigative circumstance and the sanctity of the individual." *Id.* at 26. Such a standard--one that does not take into consideration the privacy interests of the person being searched--would provide virtually no limit to the scope of a frisk for weapons. The State also asserts that "Tyler's right breast pocket was just as accessible as his left breast pocket and could have . . . easily concealed another hidden instrument that could be used to assault the officer, and in fact did conceal one." However, the State has cited no authority for a standard based on accessibility. Nor has the State convincingly argued or provided any authority for the proposition that the eventual discovery of contraband or a weapon, such as the syringe in this case, can be used to justify an otherwise impermissible search. We decline to adopt any of the State's proposed standards.

The State also suggests that because Tyler admitted that he had a knife in his left breast pocket, it was probable that Tyler was also carrying another weapon. However, the State failed to show how Tyler's admission that he was carrying a knife in his left breast pocket justified a separate intrusion under the right side of Tyler's jackets. An officer must be able to point to

---

[2]    Recognition that a frisk may, in some circumstances, extend beyond a pat-down of the outer clothing is consistent with various statements in *Terry* that suggest a flexible standard linking the scope of a protective search with the specific need for officer or public safety. *See Terry*, 392 U.S. at 25-26 ("A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation."); *id.* at 27 ("there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer"); *id.* at 29 ("[T]he limitations which the Fourth Amendment places upon a protective seizure and search for weapons . . . will have to be developed in the concrete factual circumstances of individual cases."); *id.* ("The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.").

specific and articulable facts, taken together with rational inferences from those facts, to reasonably warrant a particular intrusion. *Terry*, 392 U.S. at 21. The State has not asserted that the specific factual circumstances of this case warranted an intrusion beyond a pat-down search of Tyler's outer clothing. At the suppression hearing, the officer did not testify that Tyler was uncooperative or combative, or that a more intrusive search was necessary for officer safety. Although Tyler attempted to retrieve the X-acto knife from his exposed left shirt pocket, he stopped after the officer quickly asked him three times not to reach for it. Tyler did not make any movements toward his right pocket, and the officer did not describe Tyler's actions or movements as threatening. The officer testified that he could not see anything protruding from Tyler's right pocket and could not see any suspicious bulges. Most importantly, the officer did not first attempt a pat-down of Tyler's outer clothing over his jackets, which may have provided the basis for an additional intrusion depending on what the officer felt. Although Tyler was wearing two jackets over his shirt, the officer did not testify that the layers were so bulky as to make a frisk ineffective or impossible.

The district court indicated that absent Tyler's consent, there was no justification for any search at all, much less a search that extended beyond Tyler's outer clothing. In the absence of any argument or evidence from the State that some additional intrusion was justified, the district court did not err in determining that the scope of the search, whether viewed as a search based on consent or *Terry*, was limited to a pat-down of Tyler's outer clothing.[3]

### B.      Factual Finding that Tyler's Pocket Was Covered

We next address the State's assertions that it is "undisputed" that Tyler's right shirt pocket was exposed and that the court's finding that the pocket was covered is clearly erroneous. At the suppression hearing, both Tyler and the officer who conducted the pat-down frisk repeatedly testified that Tyler was wearing a jacket or jackets over his shirt. The officer testified that his hand was "under the jacket" when he felt the syringe in the left breast pocket of the shirt. Tyler also testified that, prior to the pat-down, he moved his jackets to expose the X-acto knife

---

[3]      We note that the district court did not rule, and we do not imply, that the general rule that a frisk be limited to the outer clothing strictly limits the search to the *outermost layer* of clothing. Thus, there may be circumstances where an individual's "outer clothing" may consist of exposed layers of clothing that are not the most exterior layer of clothing worn by the individual. "Each case of this sort will, of course, have to be decided on its own facts." *Terry*, 392 U.S. at 30.

7

protruding from his left pocket. Based on this statement, the State asserts that Tyler must have exposed *both* the left and right pockets to the officer's view. While it may be plausible to infer that Tyler exposed both pockets to the officer's view, we will not reweigh the evidence on appeal. At the conclusion of the hearing, the district court stated, "the officer, according to the uncontradicted testimony here, never patted Tyler down from the outside of the pocket, immediately went to the inside, *under the two layers*, the coat and the . . . hoodie on the outside of the flannel shirt and felt the syringe." (Emphasis added.) The district court's findings that Tyler's right shirt pocket was covered and that the officer reached under Tyler's jackets to pat down the pocket were supported by substantial and competent evidence. Therefore, we defer to the district court's finding that Tyler's right shirt pocket was not part of Tyler's outer clothing or otherwise exposed.

## III.

## CONCLUSION

A *Terry* frisk is generally limited to a pat-down frisk of a defendant's outer clothing. The district court's finding that Tyler's shirt pocket, under his jackets, was not his outer clothing is supported by substantial and competent evidence. The State did not meet its burden of demonstrating that the particular factual circumstances justified any intrusion beyond a pat-down frisk of Tyler's outer clothing. Therefore, we affirm the district court's order granting Tyler's motion to suppress evidence discovered on his person after an officer reached under his jackets.

Judge GUTIERREZ and Judge MELANSON **CONCUR.**

8