IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 45993

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: June 20, 2019 |
| Plaintiff-Respondent, | ) |
| | ) Karel A. Lehrman, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| KELLY LUCAS JOHNSON, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Nancy Baskin, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Kelly Lucas Johnson appeals from the judgment of conviction entered upon her conditional guilty plea to possession of methamphetamine, Idaho Code § 37-2732(c)(1). She asserts the district court erred in denying her motion to suppress. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Johnson was charged with possession of methamphetamine and possession of marijuana following a search of her residence. The search occurred after two Boise police officers responded to a report of a possible domestic disturbance at Johnson's residence. When the officers knocked on the door of the residence, Johnson allowed them to enter. Both officers immediately noticed the odor of burnt marijuana.

1

After entering the residence, the officers investigated the domestic disturbance. Although Johnson initially denied anyone else was in the house, she recanted and admitted a male friend was in the back bedroom. While the first officer remained with Johnson and questioned her about the domestic disturbance, the second officer proceeded to the back bedroom to talk to the male friend. As the second officer did so, he noticed the odor of burnt marijuana became stronger and was strongest in the back bedroom. Meanwhile, the first officer and Johnson went to a detached part of the residence to talk to a woman Johnson identified as her "sister" and who had reported the domestic disturbance. Johnson, her sister, and Johnson's male friend all denied there had been any physical altercation at the residence.

After speaking to each of the occupants and confirming there was no domestic violence, the second officer then questioned Johnson about the marijuana odor. Initially, Johnson denied the odor but eventually admitted she and another friend had smoked marijuana in the house earlier in the day. At that point, the second officer asked Johnson for consent to search the residence. Johnson inquired whether a warrant was needed, and the officer responded a warrant was not needed if Johnson would consent. Johnson denied consent.

The officer then explained that he did not intend to take anyone to jail; he was at a crossroads of deciding whether to apply for a search warrant if he did not have Johnson's consent; and he was "less likely to give [Johnson] a break" if he had to get a search warrant. The officer testified this discussion with Johnson about obtaining a warrant lasted approximately two minutes and thirty seconds. In contrast, Johnson testified it lasted approximately twenty-five minutes.

Eventually, Johnson stood up, said she would get the marijuana, and walked past the officers toward the back bedroom. The second officer followed Johnson. While in the back bedroom, Johnson retrieved two little containers of marijuana and handed them to the officer, and the officer noticed a propane torch, which is commonly used with methamphetamine. The officer then requested consent to search the bedroom. While crying, Johnson responded "Sure. Do whatever you want." During this search, the officer located a baggy of white crystal substance, consistent with methamphetamine, in an eyeglass container. Johnson admitted the methamphetamine was hers.

Each officer testified he believed there was probable cause to obtain a search warrant based on the marijuana odor. Nevertheless, the second officer repeatedly told Johnson he was

2

not taking her to jail, and ultimately Johnson was not arrested. The State, however, later charged Johnson with possession of methamphetamine and possession of marijuana. Johnson moved to suppress the evidence seized during the search. In support of her motion, Johnson argued "the officers refused to leave and badgered and cajoled [her] over the course of more than 2 hours." She asserted her consent was not voluntary but a result of duress and coercion.

At the motion to suppress hearing, Johnson and both officers testified, and the videos from both officers' body cameras were admitted. The district court ruled at the hearing. It noted that "in considering the totality of the circumstances and the factors discussed in the relevant case law, it is clear that an officer's indication that he will seek a warrant does not render subsequent consent to the search involuntary." The district court found that the videos from the body cameras were the best evidence of what occurred; Johnson's testimony and supporting motion were "an inaccurate summary of what occurred"; Johnson told numerous lies and inconsistencies to the officers; the officers were "calm," "professional," and did not "raise their voice[s]"; and Johnson's "consent was given freely and voluntarily and it was not the result of coercion, either direct or implied."

Based on these findings, the district court concluded the search was lawful and denied Johnson's motion. Thereafter, Johnson entered a conditional guilty plea to a reduced charge of possession of methamphetamine, but she preserved her right to appeal the denial of her motion to suppress. Johnson timely appeals.

## II.

### STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Although a warrantless entry or search of a residence is generally illegal and violative of the Fourth Amendment, such an entry or search may be rendered reasonable by an individual's

3

consent. *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct. App. 1998). In such instances, the State has the burden of demonstrating consent by a preponderance of the evidence. *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997). The State must show that consent was not the result of duress or coercion, either direct or implied. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973); *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App. 1993). The voluntariness of an individual's consent is evaluated in light of all the circumstances. *Id.* Consent to search may be in the form of words, gestures, or conduct. *State v. Knapp*, 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct. App. 1991). Whether consent was granted voluntarily, or was a product of coercion, is a question of fact to be determined by all the surrounding circumstances. *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003).

## III.

## ANALYSIS

Johnson argues her consent to search was not voluntary. On appeal, she simply reiterates her argument before the district court. She asserts that she refused to consent but that the officers "threatened [Johnson] with being arrested and taken to jail if she forced them to get a warrant"; "entic[ed] her with the idea that they would not take her to jail if she cooperated"; and "broke down her resistance and obtained her capitulation to their request for consent." We disagree. Neither the evidence nor Idaho case law supports Johnson's argument that her consent was involuntary.

This Court's decisions in *State v. Garcia*, 143 Idaho 774, 152 P.3d 645 (Ct. App. 2006) and *State v. Ballou*, 145 Idaho 840, 186 P.3d 696 (Ct. App. 2008) are dispositive of Johnson's argument. *Ballou* addresses whether an officer's statement that he will obtain a search warrant absent consent renders subsequent consent coerced and involuntary. In *Ballou*, police officers knocked on Ballou's apartment door after he had eluded the officers in a high-speed chase. *Id*. at 843-44, 186 P.3d at 699-700. Ballou's wife answered the door, wearing only a blanket. *Id.* at 844, 186 P.3d at 700. An officer told her that, if she refused to consent to the officer's search of the apartment for Ballou, the officer could "detain [the wife] in handcuffs, put her in a patrol car, and watch the house until [the officer] got a warrant." *Id.* As a result, Ballou's wife allowed the officers to enter the apartment "just as Ballou was jumping out of a back window." *Id.* The

officers apprehended Ballou, and thereafter they returned to Ballou's apartment numerous times seeking consent for additional searches.[1]  *Id.*

Ultimately, the officers' search yielded burglary tools and stolen goods, which Ballou sought to suppress, arguing "his wife's consent was not freely and voluntarily given."  *Id.*  The district court found that Ballou's wife's consent in response to the officer's initial request to search the apartment was involuntary because the officer informed Ballou's wife that "if she refused to give [consent], then the police would handcuff her and keep her in a patrol car until a search warrant was obtained."  *Id.* at 846, 186 P.3d at 702.

Rejecting the district court's analysis, this Court ruled:

> [T]he officers had probable cause to obtain a warrant to search the apartment for Ballou based on the offense of felony eluding.  Thus, the officers were not responding falsely or erroneously regarding the ability to get a warrant when they first spoke to Ballou's wife.  Because the officer honestly told Ballou's wife that a warrant could be obtained to search the apartment, we conclude that the district court incorrectly applied the law to the facts in determining that the officer's "threat" rendered the initial consent to enter the apartment and search for Ballou involuntary.  Furthermore, we are not persuaded that the officer's statement to Ballou's wife that, if she refused consent to search, she would be handcuffed and detained rendered her consent involuntary.  If Ballou's wife had denied the officer's initial request to enter the apartment and search for Ballou, then the officers would have been justified in precluding her from returning to the apartment where she potentially would have been able to destroy evidence or pose a threat to officer safety as they searched the apartment.

*Id*. at 848-49, 186 P.3d at 704-05.  Accordingly, under *Ballou*, a threat to obtain a search warrant does not render consent involuntary as long as the officer does not falsely or erroneously represent he has probable cause to get a search warrant.

Similarly, this Court in *Garcia* ruled an officer's statement that the officer will not arrest an individual if the individual complies with the officer's request does not render consent involuntary, as long as an arrest is within the officer's authority under the circumstances.  In *Garcia*, police officers approached several men in a public park, including Garcia, whom the officers observed smoking marijuana.  *Garcia*, 143 Idaho at 777, 152 P.3d at 648.  An officer told the men that if they handed over "all the marijuana they had, they would be given citations and released but, if not, they would be arrested."  *Id.*  During this encounter, Garcia consented to

---

[1]  Only the *Ballou* Court's analysis of the initial request for consent to search in lieu of obtaining a warrant is relevant to Johnson's argument.  For this reason, we do not discuss the *Ballou* Court's analysis regarding the validity of other subsequent consents.

5

the search of his truck in which the officers discovered two pounds of marijuana. *Id.* Garcia moved to suppress the marijuana, arguing his consent was coerced by the officer's statement the men would not be arrested if they handed over the marijuana. *Id.* at 779, 152 P.3d at 650. The district court denied Garcia's motion.

Affirming the district court, this Court ruled "an officer's implied or explicit offer not to arrest a suspect if he 'turns over what he has' is not coercive if it merely informs the suspect of the officer's intention to do something that is within the officer's authority based on the circumstances." *Id.* at 779-80, 152 P.3d at 650-51. The Court concluded the officers had probable cause to arrest the men for delivery of marijuana because there had been a report of men smoking marijuana in the park, and the officers had observed the men passing a marijuana cigarette among them. *Id.* at 780 n.2, 152 P.3d at 651 n.2. Accordingly, this Court concluded the officer's statement that the men would not be arrested if they handed over the marijuana was "an informational communication regarding authority the officers actually possessed" and did not render Garcia's consent involuntary. *Id.* at 780, 152 P.3d at 651.

As in *Garcia* and *Ballou*, Johnson's consent in this case was neither coerced nor made under duress but, rather, it was voluntary. As the district court found, the evidence does not support Johnson's claim of coercion, and Johnson's testimony is not credible. "[W]here voluntariness is an issue, 'the power to judge the credibility of the witnesses . . . is vested in the trial court,'" and we decline to disturb the district court's finding that Johnson's testimony was not credible. *Valdez-Molina*, 127 Idaho at 106, 897 P.2d at 997.

Furthermore, substantial evidence supports the district court's conclusion that the officers had probable cause to obtain a search warrant based on the officers' testimony about smelling marijuana. Likewise, the officers had probable cause to arrest Johnson based on the odor of marijuana and Johnson's admission--before the officers requested consent to search Johnson's residence--that she had been smoking marijuana. Moreover, Johnson does not dispute on appeal that there was both probable cause to arrest her and to obtain a search warrant. Because the officers had probable cause to arrest Johnson and to obtain a search warrant, their statements that they did not intend to arrest Johnson; were considering obtaining a search warrant; and would give Johnson "a break" if she consented, simply conveyed the officers' authority based on the circumstances. As such, the statements did not render Johnson's consent involuntary, and the searches were not unlawful.

6

## IV.

## CONCLUSION

The district court correctly concluded that Johnson's consent was voluntary and that the officers' searches were lawful.  Accordingly, we affirm the denial of the motion to suppress, and Johnson's conviction for possession of a controlled substance is affirmed.

Judge HUSKEY and Judge LORELLO **CONCUR**.