**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40475**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2014 Opinion No. 39S** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: July 24, 2014** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| GEORGE ALAN KAPELLE, | ) | |
| | ) | **SUBSTITUTE OPINION** |
| Defendant-Appellant. | ) | **THE COURT'S PRIOR OPINION** |
| | ) | **DATED MAY 7, 2014, IS** |
| | ) | **HEREBY WITHDRAWN** |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. Benjamin R. Simpson, District Judge.

Judgment of conviction for manufacturing a controlled substance and unlawful possession of a firearm, <u>affirmed</u>.

Fred R. Palmer, Sandpoint, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent. Nicole L. Schafer argued.

_____

MELANSON, Judge

George Alan Kapelle appeals from his judgment of conviction for manufacturing a controlled substance and unlawful possession of a firearm. Specifically, he argues the district court erred in denying his motion to suppress. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

In July 2011, officers received a confidential tip that a wanted felon was hiding in an abandoned trailer on Artisan Way in Bonner County. Officers went to the area described in the tip and discovered a single-wide trailer in a remote area. The trailer appeared abandoned. The officers parked near the bottom of the driveway leading to the trailer and proceeded on foot with their guns drawn. The officers were dressed in plain clothes and had their badges hanging visibly on their chests. The officers did not observe any no-trespassing signs, although Kapelle

1

later provided evidence one existed at the bottom of his driveway along with a makeshift gate he occasionally used to block his driveway. As the officers neared the trailer, they could hear loud music and voices coming from within. One of the officers walked around to the rear in order to prevent any escape from a back window.

Kapelle, engaged in a "virtual party"[1] online, observed the officer in his backyard and came out his front door to investigate. The officer in front of the trailer informed Kapelle they were with the sheriff's office and inquired whether the wanted suspect was there. The officer in the rear overheard the conversation and walked to the front of the trailer. Kapelle informed both officers that he knew the suspect and that he did not allow the suspect at his trailer anymore because of an incident where the suspect pointed a gun at Kapelle. One officer then informed Kapelle they could not leave until they knew if the suspect was in the trailer. The officers asserted they asked permission to come inside and Kapelle agreed.[2] Once inside, the officers immediately smelled the odor of raw marijuana. Kapelle asked the officers to leave and they refused. Kapelle eventually signed a consent form to search the trailer. The officers seized thirty-seven marijuana plants, scales, and other accessories. The officers also observed a firearm inside the trailer. The next day, officers discovered Kapelle had been previously convicted of a felony in California.

The state charged Kapelle with trafficking in marijuana, I.C. § 37-2732B(a)(1), and unlawful possession of a firearm, I.C. § 18-3316. Kapelle moved to compel the state to reveal the identity of the confidential informant. Kapelle also moved to suppress the evidence seized from his trailer. The district court denied both motions. Kapelle entered a conditional guilty plea to an amended charge of manufacturing a controlled substance, I.C. § 37-2732(a), and unlawful possession of a firearm. Kapelle also reserved his right to challenge the pretrial rulings. The district court imposed a unified sentence of five years, with a minimum period of confinement of two years, and placed Kapelle on probation. Kapelle appeals.

---

[1]     Kapelle explained that these parties involve multiple individuals socializing in a chat room. People play music, talk, and appear on camera. At the time the officers approached his trailer, Kapelle was in a virtual party and was in a private chat room with a lady friend.

[2]     Kapelle's version of events differed in that he asserted he motioned for the officers to wait one moment because he wanted to close the chat room due to its loud volume. Kapelle testified the officers followed him uninvited into his trailer.

2

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

### A. Entry into the Curtilage

Kapelle argues the officers entered the curtilage of his property without any legitimate societal purpose and, thus, conducted an unlawful warrantless search. The state concedes the officers entered the curtilage but contends that, because the officers were there for a legitimate societal purpose (apprehension of a dangerous felon), such entry was lawful.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV. The physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed. *Payton v. New York*, 445 U.S. 573, 585 (1980). Courts have extended Fourth Amendment protection to the curtilage, which is the area or buildings immediately adjacent to a home which a reasonable person may expect to remain private even though it is accessible to the public. *State v. Rigoulot*, 123 Idaho 267, 272, 846 P.2d 918, 923 (Ct. App. 1992). However, the presence of a police officer within the curtilage does not, by itself, result in an unconstitutional intrusion. *State v. Clark*, 124 Idaho 308, 313, 859 P.2d 344, 349 (Ct. App. 1993). Just as there is an implied invitation for citizens to access a house by using driveways or pathways to the entry, police with legitimate business are entitled to enter areas of the curtilage that are impliedly open to public use. *Id.* A criminal investigation is as legitimate a societal purpose as any other undertaking that would normally take a person to another's front door. *Rigoulot*, 123 Idaho at 272, 846 P.2d at 923. Therefore, when the police come onto private

3

property to conduct an investigation or for some other legitimate purpose and restrict their movements to places ordinary visitors could be expected to go, observations made from such vantage points are not covered by the Fourth Amendment. *Id.*

The effect a no-trespassing sign has on the implied invitation varies with the circumstances of each case. For example, in *State v. Christensen*, 131 Idaho 143, 953 P.2d 583 (1998), officers received a tip about a marijuana grow. Officers responded to the area the tip referenced and located a house with an attached hot-hut. Desiring to question the residents of this house, officers bypassed a closed gate with a no-trespassing sign affixed to it. While walking up to the house, officers observed Christensen move within his home toward the back door. The officers walked around the house to meet Christensen at the back door and, from that vantage point, were able to observe marijuana in the hot-hut. Based on this observation, the officers obtained a search warrant. Christensen was arrested and charged with manufacturing a controlled substance. Christensen filed a motion to suppress and the district court denied the motion.

On appeal, the Idaho Supreme Court reversed, holding the officers violated Christensen's rights under Article I, Section 17 of the Idaho Constitution by disregarding the closed gate and no-trespassing sign and by conducting a warrantless search.[3] *Christensen*, 131 Idaho at 148, 953 P.2d at 588. In responding to the state's argument that the absence of a fence demonstrated the property was open to the public, the Court explained:

> While the presence of a fence is a factor to consider in determining whether an area is open to the public, it is not dispositive. Many factors such as geography, aesthetics and economics may go into the decision whether or not to erect a fence. We do not believe that the ability to exclude the public is available only to those Idaho citizens with the resources to construct extensive fencing. We note that this is not a case where the message to the public was ambiguous. The no trespassing sign was clearly posted on a gate across the only public access to the property. In light of this unambiguous message, it is unclear what the presence of a fence would add. In short, Idaho citizens, especially those in rural areas, should not have to convert the areas around their homes into the modern equivalent of a medieval fortress in order to prevent uninvited entry by the public, including police officers.
>
> This opinion should not be read to mean that a no trespassing sign creates an absolute barrier to warrantless entry into the curtilage by police. To the

---

[3]     Despite the Supreme Court's express reliance on Article I, Section 17, the reasoning of the opinion in *Christensen* is equally applicable to a Fourth Amendment analysis.

4

contrary, it is not difficult to imagine circumstances where it would be entirely reasonable for a police officer, or for that matter any citizen, to ignore a no trespassing sign in order to approach a house. However, this case does not present such a set of circumstances. By his own testimony, [the officer] approached the Christensen home only to make general inquiries about nearby residents. Under these circumstances, [the officer] had no more right to ignore the no trespassing sign and closed gate than would a door-to-door solicitor.

*Id.* at 147-48, 953 P.2d at 587-88.

On the other hand, this Court has held that, where a no-trespassing sign is ambiguous and not clearly posted, the implied invitation to enter the curtilage of a home (vis-à-vis the driveway and walkways) is not revoked. *State v. Howard*, 155 Idaho 666, 672, 315 P.3d 854, 860 (Ct. App. 2013). In *Howard*, officers received an anonymous tip that marijuana was being grown in a ravine near Howard's house. The tip also named Howard and gave the address of his house. Officers drove to Howard's house using a private road (although it was unknown to officers that the road was private). Near the entry to this road, a no-trespassing sign was posted on a cattle guard. However, the sign was on the second fencepost over, was small, and was not easily noticed. Under these circumstances, this Court held that the no-trespassing sign was ambiguous because it could be interpreted to convey the message to stay off the land behind the fence (land Howard did not own) and because it was posted over one mile away from Howard's house. *Id*. Thus, the no-trespassing sign did not effectively revoke the implied invitation to enter Howard's property. *Id.*

In this case, there are two relevant inquiries: whether the officers violated the Fourth Amendment in their initial entry onto Kapelle's property and whether the officers violated the Fourth Amendment in approaching the trailer. We first address the officers' initial entry onto Kapelle's property. Assuming arguendo that Kapelle's driveway was marked with an unambiguous no-trespassing sign, the circumstances here made it reasonable for the officers to ignore that sign and approach the trailer. The officers received a tip that a wanted, dangerous felon was located in the area. The tip indicated the suspect may be armed and had physically injured individuals and property. The tip also specified that the suspect was hiding in an abandoned trailer along a certain portion of the roadway on Artisan Way. The officers located a trailer (Kapelle's residence) which appeared consistent with the information the officers obtained from the tip. These circumstances made it reasonable for officers to ignore the no-trespassing

sign at the entrance of Kapelle's driveway and traverse toward the trailer. Therefore, the initial entry onto Kapelle's property for purposes of conducting a criminal investigation did not violate the Fourth Amendment.

Next, we turn to the officers' approach to Kapelle's trailer. Kapelle argues under *Florida v. Jardines*, ___ U.S. ___, 133 S. Ct. 1409 (2013), the officers' approach to his trailer constituted an unreasonable search which, in turn, tainted the consent to enter and search his trailer. In *Jardines*, an officer, a drug-detection canine, and the dog's officer-handler walked up to the front porch of Jardine's house. The officers had no warrant. While on the porch, the dog alerted for the presence of illegal drugs. Based upon the alert, the officers applied for and obtained a search warrant to search the house. Execution of the warrant revealed marijuana plants and Jardines was charged with trafficking marijuana. Jardines moved to suppress, asserting his Fourth Amendment rights were violated by the officers' actions. The trial court granted the motion and the Florida Supreme Court affirmed. On certiorari, the United States Supreme Court likewise affirmed.

After determining the officers conducted their investigation within the curtilage of Jardines' home, the Court turned to the question of whether the investigation involved an unlicensed physical intrusion. The Court explained that, because there ordinarily exists an implicit license for everyday visitors to, within some limitations, enter upon the curtilage of a home, so too can the police. Specifically, the Court explained:

> "A license may be implied from the habits of the country," notwithstanding the "strict rule of the English common law as to entry upon a close." *McKee v. Gratz*, 260 U.S. 127, 136, 43 S. Ct. 16, 67 L. Ed. 167 (1922) (Holmes, J.). We have accordingly recognized that "the knocker on the front door is treated as an invitation or license to attempt an entry, justifying ingress to the home by solicitors, hawkers and peddlers of all kinds." *Breard v. Alexandria*, 341 U.S. 622, 626, 71 S. Ct. 920, 95 L. Ed. 1233 (1951). This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave. Complying with the terms of that traditional invitation does not require fine-grained legal knowledge; it is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters. Thus, a police officer not armed with a warrant may approach a home and knock, precisely because that is "no more than any private citizen might do." *Kentucky v. King*, 563 U.S. ___, ___, 131 S. Ct. 1849, 1862, 179 L. Ed. 2d 865 (2011).

*Jardines*, ___ U.S. at ___, 133 S. Ct. at 1415-16 (footnote omitted).

6

In discussing the relevance of the subjective intent of the officer when evaluating the implied license, the Court stated:

> Here, however, the question before the court is precisely *whether* the officer's conduct was an objectively reasonable search. As we have described, that depends upon whether the officers had an implied license to enter the porch, which in turn depends upon the purpose for which they entered. Here, their behavior objectively reveals a purpose to conduct a search, which is not what anyone would think he had license to do.

*Id.* at ___, 133 S. Ct. at 1416-17.

In this case, it is undisputed that the officers entered the curtilage of Kapelle's property. As the officers approached the trailer, one deviated from the path and went around to the rear window.[4] At this time, both officers had their guns out and by their sides. Next, Kapelle observed the officer in his backyard and came out his front door to investigate. The officer in the front engaged Kapelle in conversation while the officer in the rear walked back around front. Kapelle informed the officers that the wanted suspect had been at his trailer in the past, but was no longer allowed there due to the suspect pointing a gun at Kapelle. One officer then informed Kapelle that they could not leave until making sure that the suspect was not in the trailer and inquired whether they could enter the trailer to search. Kapelle consented.

The officer's conduct in approaching the home with his gun drawn, circling around back of the trailer and stating he would not leave until able to search the trailer, objectively reveals a purpose to conduct a search. This is beyond the implied license of activities that any individual would believe he or she were able to do. *Jardines*, ___ U.S. at ___, 133 S. Ct. at 1419. Therefore, the officer's conduct constituted a warrantless search in violation of the Fourth Amendment.

Having concluded the officer's conduct in circling around the trailer constituted an illegal search, we must next determine what effect this had upon Kapelle's subsequent consent to enter and search. The exclusionary rule calls for suppression of evidence that is gained through unconstitutional governmental activity. *Segura v. United States*, 468 U.S. 796, 815 (1984); *State v. Wigginton*, 142 Idaho 180, 184, 125 P.3d 536, 540 (Ct. App. 2005). This prohibition against the use of derivative evidence extends to the indirect as well as the direct fruit of the

---

[4] While the district court found the officers stayed on the path to the front door of the trailer, this finding is not supported by any evidence in the record and, thus, is clearly erroneous.

government's misconduct. *Segura*, 468 U.S. at 804; *Wong Sun v. United States*, 371 U.S. 471, 484 (1963). Nevertheless, "[s]uppression is not justified unless 'the challenged evidence is in some sense the product of illegal governmental activity.'" *Segura*, 468 U.S. at 815 (quoting *United States v. Crews*, 445 U.S. 463, 471 (1980)). That is, "evidence will not be excluded as 'fruit' unless the illegality is at least the 'but for' cause of the discovery of the evidence." *Id.* Where a defendant has moved to suppress evidence allegedly gained through unconstitutional police conduct, the state bears the ultimate burden of persuasion to prove that the challenged evidence is untainted, but the defendant bears an initial burden of going forward with evidence to show a factual nexus between the illegality and the state's acquisition of the evidence. *Alderman v. United States*, 394 U.S. 165, 183 (1969); *Wigginton*, 142 Idaho at 184, 125 P.3d at 540; *State v. Babb*, 136 Idaho 95, 98, 29 P.3d 406, 409 (Ct. App. 2001). This requires a prima facie showing that the evidence sought to be suppressed would not have come to light but for the government's unconstitutional conduct. *Wigginton*, 142 Idaho at 184, 125 P.3d at 540; *see United States v. Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000); *see also Nardone v. United States*, 308 U.S. 338, 341 (1939). By expressing the query as a "but for" test, we do not imply that a defendant bears the burden to prove a negative--that the state would not or could not have discovered the evidence on any set of hypothetical circumstances that could have arisen absent the illegal search. *State v. McBaine*, 144 Idaho 130, 134, 157 P.3d 1101, 1105 (Ct. App. 2007). Rather, the defendant need only show that, on the events that did take place, the discovery of the evidence was a product or result of the unlawful police conduct. *Id.*

In *McBaine*, officers were investigating the report of a methamphetamine lab located inside McBaine's house. Officers knocked on the front door and McBaine answered. One of the officers observed McBaine's girlfriend inside and told her that he desired to come inside and speak with her. McBaine responded that he would rather the officers speak with his girlfriend outside. The officer stated he preferred to speak to the girlfriend alone and then entered the house without permission from McBaine or the girlfriend. Shortly thereafter, the officer went back outside. McBaine subsequently gave the officers consent to search his house. The search resulted in the discovery of a methamphetamine lab. McBaine moved to suppress the evidence and the district court denied the motion.

On appeal, McBaine argued the discovery of the lab should have been suppressed because his consent was the product of the officer's unjustified entry into his house. *Id.* at 133,

8

157 P.3d at 1104. This Court examined the consequences of the unlawful entry and emphasized that the entry did not yield any incriminating information. The officer did not search for contraband and did not act in a threatening or overbearing manner. Further, the officer's intrusion had ended before consent was requested of McBaine. Thus, the Court held McBaine failed to demonstrate a causal link between the illegal entry by the officer and McBaine's subsequent consent to search. *Id.* at 135, 157 P.3d at 1106.

The circumstances in this case are analogous to those in *McBaine*. Here, the officer's illegal search did not yield any incriminating evidence, nor any evidence which would have affected Kapelle's decision to grant consent to enter and search his trailer. Furthermore, by the time Kapelle consented to the entry, this officer had returned to the front of the trailer. Thus, the illegal search had ended and the officer was again in a place he was lawfully entitled to be.

Moreover, while the officers approached Kapelle with their guns drawn, the officers did not aim their guns at Kapelle and kept them pointed toward the ground. Given the circumstances of the encounter (searching for a dangerous suspect), it was reasonable for the officers to take precautions. Furthermore, the officers' conversation with Kapelle appeared to be nonaccusatory and cordial in nature. When requesting consent to search Kapelle's home, an officer inquired, "Brother, you know we can't leave unless we know he is here or not. Can we just make sure he is not hiding on the crapper or just sitting on the couch right there behind you." The officers did not threaten Kapelle or create an overbearing environment. Therefore, we hold Kapelle has failed to demonstrate his consent to enter and search, and the resulting evidence, was the direct or indirect result of the illegal search.

Kapelle's argument on appeal focuses on the attenuation doctrine. That doctrine requires a determination of "whether the chain of causation proceeding from the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstance so as to remove the 'taint' imposed upon that evidence by the original illegality." *Crews*, 445 U.S. at 471. As the United States Supreme Court has stated, "attenuation analysis is only appropriate where, as a threshold matter, courts determine that 'the challenged evidence is in some sense the product of illegal governmental activity.'" *New York v. Harris*, 495 U.S. 14, 19 (1990) (quoting *Crews*, 445 U.S. at 471). There being no tainted evidence here, there is no occasion for application of the attenuation doctrine.

9

**B.     Consent to Enter and Search**

Kapelle argues there was not substantial and competent evidence to support the district court's finding that he consented to entry into his home.  Kapelle also argues that, even if he did consent, his consent to enter and search was not voluntary or was revoked.  The state responds that the district court correctly determined Kapelle consented to the entry and search and that such consent was voluntary.

Although a warrantless entry or search of a residence is generally illegal and violative of the Fourth Amendment, such an entry or search may be rendered reasonable by an individual's consent.  *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct. App. 1998).  In such instances, the state has the burden of demonstrating consent by a preponderance of the evidence.  *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997).  The state must show that consent was not the result of duress or coercion, either direct or implied.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973); *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App. 1993).  The voluntariness of an individual's consent is evaluated in light of all the circumstances.  *Whiteley*, 124 Idaho at 264, 858 P.2d at 803.  Consent to search may be in the form of words, gestures, or conduct.  *State v. Knapp*, 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct. App. 1991).  Whether consent was granted voluntarily, or was a product of coercion, is a question of fact to be determined by all the surrounding circumstances.  *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003).

First, we address Kapelle's contention that the district court's finding that he consented to the officers' entry, and that the consent was voluntary, is not supported by substantial and competent evidence.  At the suppression hearing, one of the officers testified that he made the following statement to Kapelle:  "Brother, you know we can't leave unless we know he is here or not.  Can we just make sure he is not hiding on the crapper or just sitting on the couch right there behind you."  Kapelle responded, "okay" and walked into the house, leaving the door open behind him.  The other officer testified that, in response to the request to search, Kapelle either said "yes" or shook his head in the affirmative.  This is substantial and competent evidence to support the district court's finding that Kapelle consented.

Kapelle argues this consent was not voluntary because the officers showed up unannounced at his secluded trailer with guns drawn and told him they could not leave until they

knew if the wanted suspect was there. Despite these circumstances, simply because the officers exercised a reasonable degree of caution in approaching Kapelle does not necessarily mean that Kapelle's consent was coerced. Both officers testified that they explained the reason for their presence on Kapelle's property--a search for a dangerous fugitive. Further, the officers' guns were at their sides, pointed toward the ground. At the time Kapelle was asked for consent to search his trailer, he was not being threatened or intimidated. While Kapelle's testimony contradicted the officers' version of events, the district court found the officers' testimony more credible and that Kapelle's consent to the entry into his home was voluntary. There is substantial and competent evidence to support this finding, and thus, we accept it on appeal. *See State v. Rector*, 144 Idaho 643, 646, 167 P.3d 780, 783 (Ct. App. 2006) (whether a consent to a search was voluntary is a question of fact, and our standard of review requires that we accept a trial court's factual findings unless they are clearly erroneous).

Next, we address the consent to search the trailer. Kapelle argues the circumstances demonstrate consent was not voluntary. Namely, Kapelle relies upon the following circumstances: the officers refused his request that they leave, Kapelle requested to speak with his attorney and the officers refused this request, and the officers threatened to arrest him if he would not consent. However, consent is not rendered involuntary due to an officer's truthful explanation that the officer could obtain a warrant. *State v. Ballou*, 145 Idaho 840, 848, 186 P.3d 696, 704 (Ct. App. 2008). Here, the officers immediately detected the odor of raw marijuana once inside Kapelle's trailer. At a minimum, this would have allowed the officers to detain Kapelle to maintain the status quo while they obtained a search warrant. While Kapelle contends the odor of marijuana did not entitle the officers to stay because possession of marijuana is a nonviolent crime, the relevant distinction is jailable offenses versus nonjailable offenses. *See State v. Robinson*, 144 Idaho 496, 500-01, 163 P.3d 1208, 1212-13 (Ct. App. 2007). Possession of marijuana is punishable by imprisonment of up to one year. I.C. § 37-2732(c)(3). Furthermore, as Kapelle concedes, he did not have a Sixth Amendment right to an attorney. There are legitimate reasons why an officer may refuse to allow a suspect to make a phone call during an investigation. For example, as testified to here, to prevent the suspect from informing unknown individuals about the location of the incident and having such individuals drive to the scene, thereby threatening officer safety and impeding the investigation. Other factors demonstrating that consent was voluntary are that Kapelle was not in handcuffs and the officers

11

informed him of his *Miranda*[5] rights. Given these circumstances, Kapelle has not shown that the district court's finding that consent to search the trailer was voluntary was clearly erroneous.

## C.    Motion to Compel

Kapelle also argues that the district court erred in denying his motion to compel. Specifically, Kapelle contends his rights to confrontation and due process were violated because, once the state offered the information provided by the informant to justify the officers' approach to the home as a legitimate societal purpose, it was asking the district court to rely on the same information which it had claimed was privileged and therefore not subject to disclosure. This, in turn, affected Kapelle's ability to pursue suppression.

It is unnecessary to resolve this issue because it speaks solely to the alleged illegal search of the curtilage. As we held above, Kapelle failed to demonstrate a causal nexus to the subsequent consent to enter and search and, ultimately, the discovery of the incriminating evidence. Therefore, the district court's error was harmless beyond a reasonable doubt. *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983) (constitutional error does not require reversal of a conviction on appeal if the appellate court is satisfied that the error was harmless beyond a reasonable doubt).

## IV.
## CONCLUSION

Kapelle failed to demonstrate his consent to enter and search, and the resulting evidence, was the direct or indirect result of the illegal search. There is substantial and competent evidence to support the district court's finding that Kapelle voluntarily consented to the entry and search of his trailer. Even assuming error in the district court's denial of Kapelle's motion to compel, such error was harmless. Therefore, the district court correctly denied Kapelle's motion to suppress. Accordingly, Kapelle's judgment of conviction for manufacturing a controlled substance and unlawful possession of a firearm is affirmed.

Chief Judge GUTIERREZ and Judge GRATTON, **CONCUR.**

---

[5]    *See Miranda v. Arizona*, 384 U.S. 436 (1966).