# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 49131

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | Filed: October 17, 2023 |
| Plaintiff-Respondent, | ) | |
| | ) | Melanie Gagnepain, Clerk |
| v. | ) | |
| | ) | THIS IS AN UNPUBLISHED |
| IZAAK OTIS HALLOWAY, | ) | OPINION AND SHALL NOT |
| | ) | BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

Order denying motion to suppress, <u>reversed</u>; judgments of conviction for possession of a controlled substance and injury to child, <u>vacated</u>.

Erik R. Lehtinen, Interim State Appellate Public Defender; Emily M. Joyce, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Mark W Olson, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Judge

Izaak Otis Halloway appeals from his judgments of conviction for felony possession of a controlled substance (heroin) and misdemeanor injury to a child. Halloway argues the district court erred in denying his motion to suppress evidence obtained during a search. We reverse the order denying Halloway's motion to suppress and vacate his judgments of conviction.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In January 2021, Child Protective Services (CPS) workers visited Cassie Deniger's apartment after receiving information about supervision issues and substance use where children were present. Deniger, Halloway's girlfriend, consented to the CPS workers entering the apartment to conduct a welfare check. Once inside, the CPS workers observed a marijuana pipe and other potential drug paraphernalia, prompting a CPS worker to call 911.

1

When officers arrived, the CPS workers opened the door and allowed the officers to enter the apartment. After entering, Officer Delaney observed Deniger seated on the couch in the living room and began to speak with her about the marijuana pipe and other potential paraphernalia items. Officer Delaney asked Deniger to step outside into the hallway to talk and then inquired about whether additional drugs or paraphernalia were in the apartment. Deniger disclosed she stored marijuana in the closet of the bedroom shared with Halloway, where he was asleep. Following additional questioning from the officers and a CPS worker, Deniger consented to a search of the entire apartment. In the shared bedroom, officers found other narcotics and paraphernalia in a small bag. Halloway claimed ownership of the small bag.

The State charged Halloway with possession of a controlled substance, injury to a child, and possession of paraphernalia. Halloway filed a motion to suppress, arguing that the officers' initial entry into the apartment was warrantless and that no exigent circumstances existed to permit the warrantless entry. Additionally, Halloway asserted Deniger's consent was involuntary and that he revoked any consent to search the apartment. In response, the State argued that Halloway lacked standing to challenge the entry and search of the apartment and that Deniger validly consented to the search of the entire apartment. At an evidentiary hearing, Halloway, Deniger, and Officer Delaney testified, and video from Officer Delaney's body camera was admitted into evidence.

The district court denied Halloway's motion to suppress. Based upon the evidence and the State's concessions, the district court presumed Halloway had standing to challenge the search. In determining whether the officers' initial entry was lawful, the district court found neither party provided any authority to indicate the officers' initial entry into the apartment was in violation of Halloway's rights and concluded the officers had "the right to be there." The district court also concluded Deniger validly consented to a search of the entire apartment.

Halloway pled guilty conditionally to felony possession of a controlled substance, Idaho Code § 37-2732(c)(1) and misdemeanor injury to a child, I.C. § 18-1501(2) and reserved his right to appeal the denial of his suppression motion. Halloway timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts

2

as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Halloway argues the district court erred in denying his motion to suppress because the warrantless entry was unlawful and Deniger's consent was coerced through baseless threats. The State asserts that Deniger's consent to enter the apartment included law enforcement and that her consent to search was voluntary and not the product of coercion because the police were not overbearing and accurately explained their investigative authority.[1]

The Fourth Amendment to the United States Constitution and Article I, Section 17 of the Idaho Constitution prohibit unreasonable searches and a warrantless search is "presumptively unreasonable." *State v. Hansen*, 151 Idaho 342, 346, 256 P.3d 750, 754 (2011) (citations omitted); *see Donovan v. Dewey*, 452 U.S. 594, 598 n.6 (1981) ("Absent consent or exigent circumstances, a private home may not be entered to conduct a search or effect an arrest without a warrant."). The exclusionary rule bars the use of evidence obtained as a result of a Fourth Amendment violation. *Wong Sun v. United States*, 371 U.S. 471, 485 (1963); *State v. Vivian*, 171 Idaho 79, 83, 518 P.3d 378, 382 (2022). To determine whether evidence obtained was the result of a Fourth Amendment violation, this Court "must consider whether the evidence was discovered through the exploitation of the illegal actions by police or 'instead by means sufficiently distinguishable to be purged of the primary taint.'" *Vivian*, 171 Idaho at 83, 518 P.3d at 382 (quoting *Wong Sun*, 371 U.S. at 487-88). The defendant bears the initial burden of showing a factual nexus between the constitutional violation and the obtained evidence. *State v. Kapelle*, 158 Idaho 121, 127, 344 P.3d 901, 907 (Ct. App. 2014); *accord Vivian*, 171 Idaho at 83-84, 518 P.3d at 382-83. The defendant meets this burden by showing that the "discovery of the evidence was a product or result of the unlawful

---

[1] Both parties also present arguments regarding whether law enforcement's initial entry into the home was lawful, including whether that entry tainted Deniger's subsequent consent to search. Because we conclude that Deniger's consent was not voluntary irrespective of any taint by the initial entry, we need not address the merits of the parties' arguments regarding whether the initial entry by law enforcement at the invitation of the CPS workers was constitutionally permissible.

police conduct." *State v. McBaine*, 144 Idaho 130, 134, 157 P.3d 1101, 1105 (Ct. App. 2007). Once the defendant has established the causal nexus between the illegality and subsequent evidence, the burden shifts to the State which may defeat this causal showing by demonstrating the search was within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *State v. Plata*, 171 Idaho 833, 840 526 P.3d 1003, 1010 (2023); *Vivian*, 171 Idaho at 84, 518 P.3d at 383. The State bears the ultimate burden of demonstrating the evidence is untainted by unconstitutional government conduct. *Vivian*, 171 Idaho at 83, 518 P.3d at 382; *State v. Bills*, 166 Idaho 778, 782, 463 P.3d 412, 416 (Ct. App. 2020); *Kapelle*, 158 Idaho at 127, 344 P.3d at 907.

Voluntary consent is an established exception to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *State v. Garcia*, 143 Idaho 774, 778, 152 P.3d 645, 649 (Ct. App. 2006). The State bears the burden of demonstrating by a preponderance of the evidence that an individual's consent to search was freely and voluntarily given. *Schneckloth*, 412 U.S. at 222; *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997). The State must establish the consent was not the result of duress or coercion, either direct or implied. *Schneckloth*, 412 U.S. at 227; *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App. 1993). The voluntariness of one's consent is a factual finding based on reasonable inferences that will not be disturbed on appeal unless clearly erroneous. *State v. Jaborra*, 143 Idaho 94, 97, 137 P.3d 481, 484 (Ct. App. 2006) (upholding the district court's finding of fact that consent was coerced as supported by substantial evidence). We evaluate consent under the totality of the circumstances. *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003); *Kilby*, 130 Idaho at 749, 947 P.2d at 422.

Voluntary consent is characterized as "the product of an essentially free and unconstrained choice" but is not dependent "on the presence or the absence of a single controlling criterion." *Schneckloth*, 412 U.S. at 226-27. Consent is involuntary if the individual's will was overborne under the totality of the circumstances. *Id.* In making such determinations we assess potentially coercive police questions and the possibly vulnerable subjective state of the individual from whom consent is elicited. *Garcia*, 143 Idaho at 778, 152 P.3d at 649; *Jaborra*, 143 Idaho at 97, 137 P.3d at 484. Voluntariness weighs several factors such as the number of officers involved, the location and conditions, whether the individual was free to leave, and whether the individual knew of her right to refuse to consent. *Schneckloth*, 412 U.S. at 248-49; *Garcia*, 143 Idaho at 778, 152 P.3d at

649. Threats of legal consequences must be well-founded and rooted in the officer's ability to enforce the posed consequences. *State v. Ballou*, 145 Idaho 840, 848, 186 P.3d 696, 704 (Ct. App. 2008) (finding officers had probable cause based on felony eluding therefore truthfully told suspect's wife a search warrant could be obtained); *Garcia*, 143 Idaho at 779, 152 P.3d at 650 (holding officers did not falsely threaten acquisition of a search warrant when evidence gathered provided requisite probable cause); *State v. Abeyta*, 131 Idaho 704, 708-09, 963 P.2d 387, 391-92 (Ct. App. 1998) (addressing voluntariness where police threatened choice between consenting to a search or a search pursuant to a warrant). Accordingly, consent must be "free from any aspect of official coercion," *Schneckloth*, 412 U.S. at 229, and "is more likely to be found involuntary if contaminated by officers' false or erroneous statements regarding a warrant or the ability to obtain one" *Ballou*, 145 Idaho at 848, 186 P.3d at 704.

Although Halloway challenged the voluntariness of Deniger's consent, the district court made almost no express factual findings related to that consent. The district court's findings regarding Deniger's consent were limited to the following statement: Deniger "was not the most happy person to begin with, and I get that, that she would be upset, but she also clearly gave consent." The district court's statement does not, however, address the voluntariness of Deniger's consent or any of the factors that would inform such a decision. Thus, the only clear factual finding is that Deniger was not "happy." The evidence supports that finding. But that is not the end of the analysis with respect to whether Deniger's consent was voluntary. As noted, that analysis includes consideration of several factors. The relevant factors advanced by Halloway in district court included the threats by officers that they were not going to leave until they finished investigating the safety of Deniger's children, law enforcement threats that Deniger's children could be taken away, Deniger was not free to leave, the presence of multiple officers, the small size of the apartment, the constant presence of law enforcement or CPS workers blocking or watching the front door, and the lack of any advisement regarding the warrant requirement or Deniger's right to refuse consent.

Similarly, on appeal, Halloway argues Deniger's consent was coerced by baseless threats to remove her children and the circumstances establish the pressure to consent was overbearing. The State contends Deniger had a brief conversation with officers outside her apartment, was not in handcuffs or under arrest, and her movements were not strictly controlled. The State further argues questioning was not overly aggressive or hostile, and the officers were entitled to

5

investigate. The State contends that officers did not specifically threaten to take Deniger's children if she did not consent to a search; but officers were concerned about drugs in proximity to children.

The record shows officers implied that either Deniger needed to consent to a search of the entire apartment or their concerns would result in the children being taken into the State's custody. Officers told Deniger they would not leave until they investigated; they would remove the children if they did not investigate; and investigation required searching the house.

Deniger's small apartment was filled with three officers, two CPS workers, and the other occupants. Officer Delaney moved Deniger outside into the hallway away from her children and questioned her. Deniger was surrounded by officers and CPS employees which restricted her movement, and she responded to questions while visibly distraught. Deniger stated she was not losing her children over this and Officer Delaney replied, "Well then you need to cooperate with me." A CPS worker stated, "I know you're afraid and you don't want to talk but I need you to be honest because we can work with people who are honest."[2] One officer asked if there was anything else they should remove before CPS found it. During the questioning Officer Delaney stated: "Alright, you realize you're not helping yourself out here right. I told you we have to investigate this, you said you don't want your kids taken away. So I'm not leaving until I figure out what's going on." The other officer a few moments later said, "But understand this if we don't feel comfortable leaving the kids in your custody, we will shelter them today." Ultimately, Deniger acquiesced to the officers' repeated requests to search the apartment.

In sum, multiple officers and CPS workers were involved in questioning or making statements to Deniger. Officers focused on obtaining consent to search and exploited Deniger's fear of losing her children. Although there is no requirement that police inform Deniger that she was "free to leave or that [s]he has a right to refuse consent, these factors are nevertheless relevant when viewing the totality of the circumstances." *Jaborra*, 143 Idaho at 97, 137 P.3d at 484; *see Ballou*, 145 Idaho at 849, 186 P.3d at 705. There is no indication in the record that Deniger was made aware of her right to refuse consent or walk away. Under the totality of the circumstances, Deniger's consent to search was not voluntarily given. As a result, Halloway was entitled to

---

[2] When Deniger first spoke to Officer Delany she stated, "I literally just woke up to all of this." Once outside Deniger appeared frustrated and said, "This is like totally unexpected and I just woke up to all this and I don't even know what the f*** is going on." During questioning, a CPS worker mentioned Deniger's prior cocaine use, prompting additional questions.

suppression of the evidence discovered as a result of the search performed pursuant to Deniger's consent.

## IV.

## CONCLUSION

The district court erred in denying Halloway's suppression motion. We reverse the district court's order denying Halloway's suppression motion and vacate Halloway's judgments of conviction.

Chief Judge LORELLO and Judge HUSKEY **CONCUR**.