**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51351**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: November 21, 2025** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| STEVEN DOUGLAS BUCKLES, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Barry W. McHugh, District Judge.

Judgments of conviction for possession of a controlled substance, possession of drug paraphernalia, and misdemeanor injury to a child, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge Pro Tem

Steven Douglas Buckles appeals from his judgments of conviction for possession of a controlled substance, possession of drug paraphernalia, and misdemeanor injury to a child. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Two officers went to an apartment rented by Buckles' adult daughter to conduct a welfare check based on a report by the Idaho Department of Health and Welfare regarding suspected drug use where children were present. Buckles, his daughter, and her two young children resided at the apartment. Buckles answered the door, and one officer immediately smelled an odor of burnt fentanyl. The officers waited outside the apartment while Buckles closed the door and went to get

1

his daughter. When the daughter came to the door, the first officer asked to be allowed inside to speak with the daughter privately, but she requested that the three of them speak outside. When the first officer said they could speak outside (but the first officer indicated she would be more comfortable speaking inside), the daughter invited the officers in. While standing in the living room area of the apartment, the officers informed the daughter that they were there because of a report of possible drug use in the presence of children. The daughter responded that she had used drugs in the past but was no longer using drugs. The second officer asked the daughter why she was lying to them and whether she "was fine with running [their] drug dog through [the apartment]." The daughter asked whether the officers had a warrant to search the apartment, and one of the officers told the daughter they did not. The officers again confronted the daughter with the report of drug use in the apartment and asked for permission to search to confirm her contention that no drugs were present. The daughter stated that she did not want the officers to search the apartment.

While the officers were speaking to the daughter, Buckles was down the hall from the living room helping the two children take their baths. The first officer asked, "Can I go back there and talk to [Buckles]?" The daughter responded, "Yeah, he's with the dog." After some confusion, it was clarified that Buckles was in the daughter's bedroom and one child was still in the bathtub. The daughter then called out, "Hey dad, they want to talk with you real quick." The second officer suggested that the daughter hold her toddler and that the first officer "go with [Buckles] back there" so he could watch the other child still in the bathtub. The daughter then responded, "Okay." When Buckles came out into the hallway, the second officer told Buckles to bring the toddler out to the daughter so the officer could talk with Buckles. Buckles came out and handed the toddler to the daughter. The first officer then stated to Buckles, "I just want to talk to you, back there," gesturing down the hallway. The first officer then followed Buckles down the hallway and entered the daughter's bedroom, where the officer saw drug paraphernalia in plain view on the vanity. The first officer had Buckles return to the living room and instructed him to sit on the couch. The first officer informed the daughter and Buckles of the drug evidence found in the bedroom.

The second officer then noticed a methamphetamine pipe in plain view on an end table next to where Buckles was seated on the couch. The first officer then took Buckles outside and

spoke to him. After being informed of his *Miranda*[1] rights, Buckles admitted that he intended to smoke methamphetamine later that day. The daughter consented to a search of the apartment. Buckles consented to a search of his backpack and wallet which revealed methamphetamine. Additional methamphetamine was found in Buckles' wallet. Buckles was charged with possession of a controlled substance (I.C. § 37-2732(c)(1)), possession of drug paraphernalia (I.C. § 37-2732A(1)), and misdemeanor injury to a child (I.C. § 18-1501(2)).

Buckles filed a motion to suppress the evidence, arguing the officer's entry and search of his daughter's bedroom exceeded the limited scope of her consent to enter the home in violation of his Fourth Amendment right to be free from unreasonable searches and seizures. Buckles asserted that all the evidence subsequently discovered was subject to exclusion as the result of the officer's unlawful conduct. The district court denied the motion to suppress, and Buckles pled guilty to all charges. Buckles appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Buckles does not dispute that the daughter voluntarily consented to the officers' initial entry into the apartment and living room, nor does Buckles argue that his daughter withdrew that initial consent. Rather, Buckles argues that his daughter did not consent to a search of her bedroom and that search resulted in the discovery of the methamphetamine pipe next to Buckles on the end

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1996).

3

table in the living room and the methamphetamine in his backpack and wallet. Accordingly, Buckles asserts the evidence was tainted as a result of the warrantless search of his daughter's bedroom. We disagree.

The evidence obtained relating to Buckles includes a methamphetamine pipe that was seen by the officers on a table in the living room immediately next to where Buckles was seated while talking with the officers. Buckles does not challenge that this pipe was in plain view of the officers in the living room. The rest of the evidence obtained relating to Buckles was found as a result of a subsequent search of his wallet and backpack following the discovery of the pipe. This search was performed with Buckles' consent.

Although a warrantless entry or search of a residence is generally illegal and violative of the Fourth Amendment, such an entry or search may be rendered reasonable by an individual's consent. *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct. App. 1998). In such instances, the State has the burden of demonstrating consent by a preponderance of the evidence. *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997). The State must show that consent was not the result of duress or coercion, either direct or implied. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973); *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App. 1993). The voluntariness of an individual's consent is evaluated in light of all the circumstances. *Whiteley*, 124 Idaho at 264, 858 P.2d at 803. Consent to search may be in the form of words, gestures, or conduct. *State v. Knapp*, 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct. App. 1991). Whether consent was granted voluntarily, or was a product of coercion, is a question of fact to be determined by all the surrounding circumstances. *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003).

The exclusionary rule bars the use of physical evidence and verbal statements obtained as a result of a Fourth Amendment violation. *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963). When determining whether evidence is obtained as a result of a Fourth Amendment violation--so called "fruit of a poisonous tree"--the trial court must consider whether the evidence was discovered through the exploitation of the illegal actions by police or instead by means sufficiently distinguishable to be purged of the primary taint. *Id.* at 488. Where a defendant has moved to suppress evidence allegedly gained through unconstitutional police conduct, the State bears the ultimate burden of persuasion to prove that the challenged evidence is untainted, but the

4

defendant bears an initial burden of going forward with evidence to show a factual nexus between the illegality and the State's acquisition of the evidence. *State v. Kapelle*, 158 Idaho 121, 127, 344 P.3d 901, 907 (Ct. App. 2014). This requires a prima facie showing that the evidence sought to be suppressed would not have come to light but for the government's unconstitutional conduct. *Id.*

Here, the daughter gave the officer verbal consent to enter the daughter's bedroom. The district court found that the daughter "gave permission to [the officer] to walk to the back master bedroom where [Buckles] was watching [the] other child." The district court also found that the daughter had consented to the officers "entry into her home, even though it was originally limited in scope to the front part of the home." The district court further found that the daughter "extended that scope when she allowed [the officer] to go back to the master bedroom to speak with [Buckles]." Buckles has not shown error in the district court's finding that the daughter consented to the officer walking into the daughter's bedroom. Even if the officer lacked consent to enter the daughter's bedroom, the evidence relating to Buckles was found in the living room immediately next to where he was sitting. The additional evidence was discovered because of a subsequent search of Buckles' backpack and wallet, which he consented to.

We accept the trial court's findings of fact that are supported by substantial evidence. *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. The officers' bodycam videos show that, while it is possible the daughter was initially confused about Buckles' location in the apartment when the officers requested the daughter's consent to go down the hallway and speak to Buckles, the officers explained to the daughter that Buckles was straight down the hallway where the officers could see him. When Buckles then came to the front of the apartment carrying the toddler, the second officer suggested that Buckles leave the toddler with the daughter so that the first officer could go back and talk to Buckles. The daughter then responded, "Okay." The first officer told Buckles she wanted to speak to Buckles "back there" and then followed him to the bedroom where drug paraphernalia (belonging to the daughter) was in plain view. When Buckles and the officer returned to the living room to speak with the daughter, the officer then noticed the methamphetamine pipe (belonging to Buckles) sitting on the coffee table. Buckles does not challenge the daughter's consent to the officers to be in the living room, where the methamphetamine pipe was in plain view.

The finding of the district court that the daughter consented to the first officer entering the bedroom is supported by substantial evidence. The methamphetamine pipe belonging to Buckles was discovered by the second officer in plain view in the living room. Therefore, the evidence seized by the officers was not tainted by unlawful police conduct and should not be excluded under the "fruit of the poisonous tree" doctrine.

## IV.

## CONCLUSION

Buckles has failed to show the district court erred in denying his motion to suppress. Therefore, Buckles' judgments of conviction for possession of a controlled substance, possession of drug paraphernalia, and misdemeanor injury to a child are affirmed.

Judge LORELLO and Judge HUSKEY, **CONCUR**.